UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE SPARKS,

                Plaintiff(s),            CASE NUMBER: 09-12092
                                                   HONORABLE VICTORIA A. ROBERTS

v.

HOMECOMINGS FINANCIAL, LLC,

                Defendant(s).
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

**I.    INTRODUCTION**

This matter is before the Court on Defendant's "Motion to Dismiss or, in the Alternative, for Summary Judgment." (Doc. #9). Defendant asks the Court to dismiss Tyrone Sparks' Complaint in its entirety.

Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

**II.    BACKGROUND**

On June 17, 2004, Sparks signed an Offer to Purchase Real Estate in which he agreed to purchase 20075 Avon ("the Property") for $88,000.00. He obtained a mortgage loan from Approved Mortgages, Inc. on July 26, 2004.

On August 3, 2004, Approved Mortgages assigned the mortgage to Defendant.

Sparks filed a Complaint in the Wayne County Circuit Court on April 29, 2009. The case was moved to this Court on May 29, 2009.

On June 10, 2009, Sparks filed an Amended Complaint for: (1) violation of the

Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §1639(h); (2)

violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §1601 *et seq.*; (3) fraudulent

misrepresentation; (4) negligent misrepresentation; and (5) violation of the Mortgage

Brokers, Lenders, and Servicers Licensing Act, MCLA §445.1672(a) and (b).

### III.    STANDARDS OF REVIEW

Sparks claims that Defendant: (1) violated HOEPA and TILA; and (2) fraudulently

misrepresented (a) the value of the Property (b) the value of other property on the

mortgage market and (c) his monthly principal and interest amount.  The Court reviews

these claims under Fed. R. Civ. P. 56(c) because it relies on documents outside of the

pleadings to determine whether Defendant is entitled to judgment as a matter of law.

Sparks claims that Defendant:  (1) violated the Mortgage Brokers, Lenders, and

Servicers Licensing Act; (2) negligently misrepresented (a) the value of the Property (b)

the value of other property on the mortgage market (c) his monthly principal and interest

amount and (d) the idea that he could sell the Property or refinance the loans; and (3)

fraudulently misrepresented the idea that he could sell the Property or refinance the

loans.  The Court reviews these claims under Fed. R. Civ. P. 12(b)(6).

### A.    Fed. R. Civ. P. 56(c)

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law."  In reviewing a motion for

summary judgment, "the evidence as well as all inferences drawn therefrom must be

2

read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

**B.    Fed. R. Civ. P. 12(b)(6)**

When reviewing a Fed. R. Civ. P. 12(b)(6) motion, the trial court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Because a Fed. R. Civ. P. 12(b)(6) motion rests upon the pleadings rather than the evidence, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of witnesses." *Miller*, 50 F.3d at 377 (citing *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994)).

3

However, while this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). Rather, the complaint must contain either direct or inferential allegations with regard to all the material elements to sustain recovery under some viable legal theory. *DeLorean*, 991 F.2d at 1240 (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct.1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.    APPLICABLE LAW AND ANALYSIS

### A.    Violation of HOEPA (Count I)

Sparks says Defendant violated 15 U.S.C. §1639(h) by extending credit to him without considering his ability to repay the debt. *See* 15 U.S.C. §1639(h):

> A creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602(aa) of this title based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment.

The mortgages referred to in section 1602(aa) do not include residential mortgage transactions or mortgages that are not secured by principal dwellings. *See* 15 U.S.C. §1602(aa)(1) ("A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction[.]"). A "residential mortgage transaction" is defined as:

> a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent

4

consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.

15 U.S.C. §1602(w).

Because Sparks indicated on the Disclosure Notices that he did not intend to occupy the Property as his principal residence, the mortgage is not secured by his principal dwelling, and his §1639(h) claim fails.

Even assuming Sparks intended to occupy the Property as his principal residence, his §1639(h) claim is not plausible because the mortgage qualifies as a residential mortgage transaction.

### B.    Violation of TILA, 15 U.S.C. §1601 *et seq.* (Count II)

Sparks' Truth-in-Lending Disclosure Statement says he owes $645.72 per month, but two Temporary Payment Coupons say Sparks owes $762.38 and a Homecomings' Account Statement dated March 3, 2009 says he owes $1,042.45. Sparks says the increases in the amount owed prove Defendant violated TILA by providing him an incorrect monthly principal and interest payment amount.

TILA was enacted to "assure a meaningful disclosure of credit terms so that the consumer will be able to . . . avoid the uninformed use of credit[.]".  15 U.S.C. §1601(a). TILA is to be liberally construed in the consumer's favor.  *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 621 (6th Cir. 2002) (citations omitted).

Pursuant to 15 U.S.C. §1640(e), TILA actions for damages may be brought within one year from the date of the occurrence of the violation.  *See McCoy v. Harriman Util. Bd.*, 790 F.2d 493, 496 (6th Cir. 1986).  Under 15 U.S.C. §1635(f), actions for rescission expire three years after the transaction is completed.  *See id.*

5

Sparks' TILA claim is untimely; he obtained the mortgage loan on July 26, 2004 and did not file a lawsuit until April 29, 2009. But the Sixth Circuit provides for equitable tolling of the statute of limitations under certain circumstances:

> the statute of limitations for actions brought under 15 U.S.C. §1640(e) is subject to equitable tolling in appropriate circumstances, and that for application of the doctrine of fraudulent concealment, the limitations period runs from the date on which the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation.

*Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1043 (6th Cir. 1984). To toll the limitations period based on fraudulent concealment, Fed. R. Civ. P. 9(b) requires Sparks to plead three elements with particularity: (1) wrongful concealment of Defendant's actions; (2) Sparks' failure to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) Sparks' due diligence until discovery of the facts. *See Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) (citing *Weinberger v. Retail Credit Co.*, 498 F.2d 552 (4th Cir. 1974)).

The Mortgage that Sparks signed says:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges**. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3.

    .     .     .

3.  **Funds for Escrow Items**. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum . . . to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c)

6

premiums for any and all insurance required by Lender under
Section 5; and (d) Mortgage Insurance premiums, if any, or any
sums payable by Borrower to Lender in lieu of the payment of
Mortgage Insurance premiums in accordance with the provisions of
Section 10.

The Initial Escrow Account Disclosure Statement says Sparks' monthly mortgage

payment is $762.38:  $645.72 for principal and interest, and $116.66 for escrow for the

first year.

Defendant did not conceal the fact that Sparks would owe $762.38 per month for

at least the first year, nor was it wrongful for Defendant to charge Sparks $762.38 per

month.

In addition, Defendant did not conceal the fact that Sparks' monthly escrow

payments might increase.  *See* Initial Escrow Account Disclosure Statement:

Under normal escrow practices, [Sparks'] monthly escrow payment in the
second year could be much higher than in the first. [Sparks] may
voluntarily choose to make higher payments during the first year to reduce
or eliminate the monthly payment increase in the second year.

The increase in the escrow amount – not Sparks' monthly principal and interest

payment amount – caused Sparks to owe $1,042.45 in 2009.  *See* Homecomings'

Account Statement dated March 3, 2009:

Principal and Interest:     $645.72
Escrow:                     $396.73
Total Amount Due:           $1,042.45

Contrary to Sparks' belief, his monthly principal and interest payment amount did

not increase; the escrow amount increased.

Sparks' TILA claim is dismissed; there is no genuine issue of material fact that

Sparks' monthly principal and interest amount remained constant.

7

C.      **Fraudulent Misrepresentation (Count III)**

Sparks says Defendant fraudulently misrepresented the value of the Property,

the value of other property on the mortgage market, his monthly principal and interest

payment amount, and the idea that Sparks could sell the Property or refinance the loan.

Fed. R. Civ. P. 9(b) says:

In alleging fraud or mistake, a party must state with particularity the
circumstances constituting fraud or mistake.  Malice, intent, knowledge,
and other conditions of a person's mind may be alleged generally.

The Sixth Circuit holds that Rule 9(b) must be read liberally.  *See Coffey v. Foamex*

*L.P.*, 2 F.3d 157, 161 (6th Cir. 1993).  However, at a minimum, the plaintiff must "allege

the time, place, and content of the alleged misrepresentation on which he or she relied;

the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting

from the fraud." *Id.* at 161-62 (citations omitted).  "[A]llegations of fraudulent

misrepresentation must be made with sufficient particularity and with a sufficient factual

basis to support an inference that they were knowingly made." *Id.* at 162 (citation

omitted).

A pleading that fails to comply with the requirements of Rule 9(b) fails to state a

claim under Rule 12(b)(6). *Michigan ex rel. Kelley v. McDonald Dairy Co.*, 905 F.Supp.

447, 450 (W.D. Mich.1995).  However, in the absence of Defendant's motion for a more

definite statement, dismissal for failure to satisfy Rule 9(b) is not appropriate.  *See*

*Coffey*, 2 F.3d at 162 (citing *Hayduk v. Lanna*, 775 F.2d 441, 445 (1st Cir. 1985) (in

meeting [the] Rule 9(b) particularity requirement, "federal courts must be liberal in

allowing parties to amend their complaints.")).

To succeed on his fraudulent misrepresentation claim, Sparks must show:

8

(1)     Defendant made a material representation;

(2)     the representation was false;

(3)     Defendant knew the representation was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion;

(4)     Defendant made the representation with the intention that Sparks would act on it;

(5)     Sparks acted in reliance on it; and

(6)     Sparks suffered injury.

See *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976) (quoting

*Candler v. Heigho*, 208 Mich. 115, 121 (1919)).

### 1.     Value of the Property and Value of Other Property on the Mortgage Market (Fraudulent Misrepresentation)

Sparks offered to purchase the Property for $88,000.00 before he entered into the mortgage loan with Approved Mortgages and before Defendant allegedly misrepresented the value of the Property and other property on the mortgage market. Hence, even assuming Defendant misrepresented the property values, the misrepresentations were not material to Sparks' decision to obtain a mortgage loan for the previously agreed upon purchase price.

### 2.     Monthly Principal and Interest Payment Amount (Fraudulent Misrepresentation)

Defendant did not misrepresent Sparks' monthly principal and interest payment amount; that amount remained at $645.72.

### 3.     Sell the Property or Refinance the Loan (Fraud in the Inducement)

Sparks allegation, that Defendant misrepresented the idea that he could sell the

9

Property or refinance the loans, relates to future conduct and may constitute a claim for fraud in the inducement (not fraudulent misrepresentation).  *See Samuel D. Begola Services, Inc. v. Wild Bros.*, 210 Mich.App. 636, 639 (1995) ("Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon") (citations omitted).

Fraud in the inducement requires Sparks to prove the same elements as fraudulent misrepresentation.  *See Belle Isle Grill Corp. v. Detroit*, 256 Mich.App. 463, 477 (2003).

Construing Sparks' Complaint liberally and accepting as true all factual allegations, *See Gazette*, 41 F.3d at 1064, Sparks' allegation that Defendant misrepresented the idea that he could sell the Property or refinance the loan might be plausible.  Nonetheless, Sparks' Complaint does not comply with Fed. R. Civ. P. 9(b).

Sparks has 30 days to file an amended complaint.  The amended complaint must include: (1) where the representation was made; (2) the content of the representation; (3) the fraudulent scheme; (4) the fraudulent intent of the individual(s) who made the representation; and (5) the injury Sparks suffered as a result of the representation.

### D.    Negligent Misrepresentation (Count IV)

To establish negligent misrepresentation, Sparks must show he "justifiably relied to his detriment on information prepared without reasonable care by one who owed [him] a duty of care."  *Law Offices of Lawrence J. Stockler v. Rose*, 174 Mich.App. 14, 30 (1989) (citing *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200 (1988)).   "[F]or a duty to arise[,] there must exist a sufficient relationship between the

10

plaintiff and the defendant." *Schultz v. Consumers Power Co.*, 443 Mich. 445, 450 (1993). Defendant must have an obligation to act for Sparks' benefit. *See New Dimension Dev., Inc. v. Orchard, Hiltz & McCliment, Inc.*, 2005 WL 2806234 at *4 (Mich.App. Oct. 27, 2005) ("[D]uty is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff") (quoting Prosser & Keeton, Torts (5th ed), § 53, p.356).

Sparks' claim that Defendant negligently misrepresented the value of the Property and the value of other property on the mortgage market fails to state a claim upon which relief can be granted; Sparks cannot prove he relied on Defendant's alleged misrepresentation because he offered to purchase the Property before he entered into the mortgage loan with Approved Mortgages and before Defendant allegedly misrepresented the values.

Sparks' claim that Defendant negligently misrepresented his monthly principal and interest payment amount fails to state a claim upon which relief can be granted; the monthly principal and interest payment amount remained at $645.72 (as stated in the Truth-in-Lending Disclosure Statement).

Sparks' remaining claim is that Defendant negligently misrepresented the idea that he could sell the Property or refinance the loan. In support of this claim, Sparks alleges that "[t]he resulting business relationship between the parties gave rise to a duty of care on the part of Defendant to Plaintiff." This is a legal conclusion that is insufficient to establish the duty of care element necessary for negligent misrepresentation. *See In re DeLorean Motor Co.*, 991 F.2d at 1240.

Sparks has 30 days to file an amended complaint. The amended complaint must

11

include: (1) direct or inferential allegations regarding Defendant's obligation to act for

Sparks' benefit; (2) the information regarding Sparks' ability to sell the Property or

refinance the loan that was allegedly prepared without reasonable care; and (3) the

injury Sparks suffered as a result of Defendant's alleged misrepresentation.

**E.    Violation of the Mortgage Brokers, Lenders, and Servicers Licensing Act ("MBLSLA"), MCLA §445.1672(a) and (b) (Count V)**

Sparks claims Defendant violated MBLSLA by increasing the amount he owed;

extending credit to him without regard to his ability to pay the debt, in violation of 15

U.S.C. §1639(h); and by fraudulently and negligently misrepresenting: (1) his monthly

principal and interest payment amount; (2) the value of the Property; (3) the value of

other property on the mortgage market; and (4) the idea that Sparks could sell the

Property or refinance the loan.

Under MCLA §445.1672:

It is a violation of this act for a licensee or registrant to . . .

(a)    Fail to conduct the business in accordance with law, this act, or a rule promulgated or order issued under this act.

(b)    Engage in fraud, deceit, or material misrepresentation in connection with any transaction governed by this act.

Sparks' MBLSLA claim is intertwined with his HOEPA, TILA, fraudulent

misrepresentation, and negligent misrepresentation claims; if those claims fail, Sparks'

MBLSLA claim fails as well.

Because the Court held that: (1) Sparks' HOEPA and TILA claims fail; and (2)

Defendant did not fraudulently or negligently misrepresent Sparks' monthly principal and

interest payment amount, the value of the Property, and the value of other property on

12

the mortgage market, Sparks' MBLSLA claim based on these allegations is dismissed.

The Court cannot dismiss Sparks' MBLSLA claim based on his allegation that Defendant fraudulently and negligently misrepresented the idea that he could sell the Property or refinance the loan; the Court held Sparks' fraud and negligence claim based on this allegation might be plausible.

## V.    CONCLUSION

Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.  The Court **DISMISSES** five of Sparks' claims:

(1)    HOEPA violation (count I)

(2)    TILA violation (count II)

(3)    Defendant fraudulently misrepresented the value of the Property, the value of other property on the mortgage market, and his monthly principal and interest payment amount (count III)

(4)    Defendant negligently misrepresented the value of the Property, the value of other property on the mortgage market, and his monthly principal and interest payment amount (count IV)

(5)    Defendant violated MBLSLA by increasing the amount he owed; extending credit to him without regard to his ability to pay the debt, in violation of 15 U.S.C. §1639(h); and by fraudulently and negligently misrepresenting (a) his monthly principal and interest payment amount; (b) the value of the Property; and (c) the value of other property on the mortgage market (count V)

Three of Sparks' claims proceed to trial:

(1)    Defendant fraudulently misrepresented the idea that Sparks could sell the Property or refinance the loan (count III)

(2)    Defendant negligently misrepresented the idea that Sparks could sell the Property or refinance the loan (count IV)

(3)    Defendant violated MBLSLA by fraudulently and negligently misrepresenting the idea that he could sell the Property or refinance the loan (count V).

13

Sparks must file an amended complaint consistent with this Order.  Sparks is reminded that his amended complaint must permit the Court to infer more than the mere possibility of misconduct.  *See Iqbal*, 129 S.Ct. at 1950; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level") (citations omitted).

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  October 27, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 27, 2009.

s/Linda Vertriest
Deputy Clerk

14